

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL ANDREW DORSEY | CIVIL ACTION |
| VERSUS | NO. 04-2185 |
| JAMES D. MILLER, JR. ET AL. | SECTION "A" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Michael Andrew Dorsey, is a convicted inmate currently incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Secretary of the Louisiana Department of Corrections ("DOC"), Richard Stalder; the Assistant Deputy Secretary of the DOC, Linda Ramsay; WCI Warden James D. Miller, Jr.; and WCI employees Robert Tanner, Thomas Brumfield, Wayne Seal, Larry Grow, Jerry P. Miller, Larry Wagoner, Elizabeth Oliveira and Delos Williams. Dorsey alleges that while incarcerated in WCI he has been denied adequate care for medical problems

DATE OF ENTRY
JAN 2 5 2005

DATE OF MAILING   JAN 2 5 2005

resulting from inadequate outdoor exercise. He seeks monetary compensation and injunctive relief. Record Doc. No. 1 (Complaint).

On October 21, 2004, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jennifer M. Medley, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Dorsey testified that he was convicted on December 16, 1993 of aggravated crime against nature and sentenced to 30 years in prison. He stated that he has been incarcerated in WCI for approximately six and one-half years since January 26, 1998.

Plaintiff testified that his claims in this case arise from a period of time during which he was placed in punitive segregation at WCI. He said the subject detention lasted 15 months, from September 2003 until April 16, 2004, when he was released from punitive segregation. Plaintiff stated that he was in punitive segregation during this time period because a "lieutenant fabricated some reports" that Dorsey had refused to submit to a drug test and attempted to commit suicide. Plaintiff stated that another officer had charged that plaintiff had written an inappropriate letter to a female WCI employee, tried to hang himself and repeatedly cursed the officers.

Dorsey confirmed that he asserts the following two claims in this case: (1) While in punitive segregation, plaintiff was not allowed sufficient outdoor exercise and the restriction on outdoor exercise caused him to have health problems. (2) He did not receive adequate medical treatment for the health problems.

As to plaintiff's claim that while in punitive segregation he did not receive proper outdoor exercise resulting in health problems, plaintiff testified that previously "prisoners in punitive segregation had free-standing access to at least a minimum of five hours exercise per week," but as a "result of a new policy" in September 2003, prisoners in punitive segregation or serving disciplinary cell confinement were not "allowed to go on the yard anymore." Plaintiff testified that before September 2003, prison policy would have allowed him five hours of outdoor recreation, but that after that time, he was allowed no outdoor recreation unless he was on "isolation break." Dorsey explained that inmates in isolation are given a 24-hour break from the isolation after the first ten days and a "nine-day calendar break" after the second ten days of isolation. Plaintiff stated that the break periods amounted to a ten-day interval from isolation each month and that, during the interval, he was allowed to have a mattress in his cell and go outdoors on days other than Monday or Friday.

Dorsey testified that between September and November 19, 2003, while he was in segregation, he received five or six 24-hour breaks from isolation, when he was

3

allowed to go outside for 45 minutes each time. Plaintiff said that he spent this time outdoors jogging. Plaintiff stated that during that same time period, between September and November 19, 2003, he also received two ten-day breaks during which, on days other than Mondays and Fridays or when it was raining, he was allowed to go outdoors around nine or ten times for 45 minutes each time. Dorsey complained, however, that his "last day exercising" was November 19, 2003. Plaintiff testified that after November 19, 2003, he was deprived of outdoor exercise[1] and received "not a minute" of outdoor exercise for about six months, until April 16, 2004, the date on which he was released from punitive segregation.

Dorsey stated that he wrote to his social worker and psychiatrist because he was experiencing panic attacks and other problems. Plaintiff testified that he is an active person and after five or six weeks, he was "feeling the difference in not being able to exert myself physically." Plaintiff said that on several occasions he asked defendants, Elizabeth Oliveira, his assigned social worker, and Larry Wagoner, who at that time was director of the mental health department, for permission to go outdoors and walk. Plaintiff stated that he explained his reasons for requesting to go outside, including that he was beginning to experience heartburn and his knees and back were hurting, but that

---

[1] Although Dorsey testified that the deprivation of outdoor exercise was an act of retaliation by officers at the prison, he confirmed that his claim of retaliation is the subject of another pending lawsuit and is <u>not</u> a claim he asserts in this case.

Wagoner did not allow him to go outside. Plaintiff stated that he was housed on a tier with six or seven broken windows in the winter time and at times he did not have a mattress, which exacerbated his problems.

Plaintiff testified that his outdoor exercise was taken from him during November 2003, when he received additional disciplinary charges for inappropriate communications for which he was found guilty.

Dorsey testified that the medical problems he experienced as a result of the deprivation of outdoor exercise included panic attacks, heartburn, back aches, knee pain, headaches, depression and decreased energy level. Plaintiff also confirmed that other conditions reflected in his medical records, including constipation and hemorrhoids, were the result of the lack of outdoor exercise. He stated, however, that the acne referred to in his medical records was a condition he had experienced previously and was not a result of the lack of outdoor exercise.

Dorsey testified that he is still being treated for heartburn and knee problems, and that his claim in this case is not that he did not get adequate medical treatment for various physical conditions resulting from the lack of outdoor exercise, but that he did not get adequate treatment for his psychological conditions, including depression and panic attacks in which "I feel like I was having a heart attack and about to die and I was in fear for my life . . . ."

Dorsey stated that Oliveira, a social worker at the jail who was assigned to him after Wagoner became director of the mental health department, "knew of my existing problems," and that he saw her sometimes daily and other times once a week. Plaintiff testified that his last visit with Oliveira was on October 27, 2003, and that he has now been assigned to another social worker.

Dorsey stated that he has never been sent to the Mental Health Clinic at Charity Hospital, but had been "evaluated multiple times . . . over the years" and had been in group homes previously. Plaintiff testified that his last mental evaluation was conducted on July 15, 2003 by Wagoner, who was a social worker at the jail, and Dr. Strickland, a psychiatrist who visits the prison once a week. Plaintiff testified that previously he had taken 50 mg. of Sinequan,[2] once a day for about five years. Plaintiff stated that he had been placed under Oliveira's care by Wagoner in September 2002, and before that time saw Dr. Strickland once every 90 days. Plaintiff testified that after he was placed under Oliveira's care, he saw Dr. Strickland only once on November 18, 2002, and did not see him again until July 15, 2003. Plaintiff stated that he has been referred to Dr. Strickland several times this year and has seen no other psychiatrists other than Dr. Strickland at the jail.

---

[2]Sinequan is one of a class of psychotherapeutic agents recommended for the treatment of depression and/or anxiety. Physicians' Desk Reference at 2713 (56th ed. 2002).

6

Dorsey stated that he has been assigned a new social worker, Mr. Bourgeois, whom he has seen maybe six or seven times, including "just the other day," since February 25, 2004, when Bourgeois was assigned to him. In addition to the social workers, including Wagoner, Oliveira and Bourgeois, plaintiff testified that he had also been seen by another social worker, Ms. Tyson, in October 2003 and July 2004. Plaintiff said that around March 16, he saw another social worker, Sheryl Muwwakkil, who has been the director of the jail's mental health department for only a few weeks. Plaintiff identified Nita Pittman as director of nursing and Dr. Jerry Thomas as the head physician at WCI. Plaintiff said he has not received any medications for his mental problems.

Dorsey testified that "a lot of medical records are missing" from the copy of his medical records which were provided to the court and plaintiff by WCI, as previously ordered by the court. Record Doc. Nos. 5 and 12. Plaintiff stated that the medical records are incomplete in that they do not reflect four occasions since May 26, 2004, when he was taken to Charity Hospital to receive treatment, including treatment for burst eardrums. Plaintiff testified that his last visit to Charity Hospital was on October 5, 2004. He stated that the records also do not reflect medical treatment provided to him for back pain and acne by Nurse Jacqueline Beck and ENT Master Sergeant Frances Spears, who are no longer employed at WCI.

A review of the medical records reveals the following: On October 1, 2003, plaintiff was seen by Dr. Strickland and Dr. Warren for complaints of shoulder pain, dizzy spells, blurred vision and panic attacks. Plaintiff declared himself an emergency case on November 28, 2003, and requested to see mental health professionals after a "shake down" of his prison cell. On December 4, 2003, plaintiff was referred for mental health evaluation after he complained of back pain and requested to see a social worker. The 600 mg. of Motrin prescribed for plaintiff twice per day for one week on December 11, 2003 was increased to 800 mg. once per day for six months on December 31, 2003. On March 3, 2004, plaintiff complained of bad nerves and dizziness and was referred for mental health evaluation and to Dr. Thomas. Blood work and followup care with a psychiatrist were ordered on March 9, 2004, when plaintiff complained of dizzy spells and panic attacks. On April 15, 2004, plaintiff was referred to Dr. Thomas after he complained that Motrin was eating up his stomach and requested to see a dermatologist. Plaintiff complained of back pain and Motrin hurting his stomach on April 26, 2004. Plaintiff was screened and found to have a neck spasm at C-5-6, degenerative joint disease and acne of the neck and face. Plaintiff's Motrin was discontinued and 200 mg. of Celebrex was prescribed four times each day for three months. On June 15, 2004, plaintiff was referred to a doctor when he complained of headaches, tiredness, neck and back pain, heartburn, constipation, stiff muscles and that his right ear was hurting. The

right ear pain was allegedly caused by a kick to plaintiff's jaw/ear by prison guards in May 2004 which tore plaintiff's ear drum and caused hearing loss. On June 17, 2004, plaintiff was found to have anxiety issues and referred for followup mental health and hearing loss care. Dorsey was given milk of magnesia and instructed to return for followup care in one month after he complained of headaches, muscle stiffness, hemorrhoids, stomach cramps, tiredness and constipation on July 18 and 22, 2004. Record Doc. No. 12.

The medical records also contain letters written by Dorsey to Dr. Jerry Thomas on July 26, 2004, and Nita Pittman on July 31, 2004. In his letter to Dr. Thomas, plaintiff complained that the lack of outdoor exercise had caused him to experience headaches, muscle and stomach cramps, heartburn, constipation, hemorrhoids, neck pain, leg pain, renewed back pain and atrophying muscles. In response to his letter to Dr. Thomas, plaintiff was advised by Nita Pittman that the rules on administrative segregation are controlled by the warden and not the doctors, and that outdoor exercise is governed by behavior. In his letter to Nita Pittman, plaintiff complained about the medical care he had received for acne and that lack of outdoor exercise was responsible for his medical and psychological conditions, i.e. headaches, constipation, hemorrhoids, muscles stiffness, aches and pain, etc. On August 22, 2004, plaintiff was provided with

acne cream and 200 mg. of Motrin to be taken twice each day for five days in response to his complaints about acne and his aching knees and back.  Record Doc. No. 12.

## ANALYSIS

I.     <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable Section 1983 claim under the broadest reading.[3]

II.   OUTSIDE RECREATION

Dorsey complained that while housed in punitive segregation at WCI he was not provided with sufficient outdoor exercise, which caused him to have health problems.

---

[3] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

This complaint is legally frivolous and wholly fails to state a claim. Inmates have no protected liberty interest in specific recreational opportunities. Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988)). To succeed on a claim under Section 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).

To state a claim under 42 U.S.C. § 1983, plaintiff must allege an actual injury caused by defendants' acts. See Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 (5th Cir. 1988) (Section 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); Jefferson v. City of Hazelhurst, 936 F. Supp. 382, 386 (S.D. Miss. 1995) ("To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead . . . seven elements,

[including] . . . that there exists a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.")

Plaintiff's testimony failed to establish that his numerous ailments, including panic attacks, heartburn, back aches, knee pain, headaches, depression, lower energy level, constipation and hemorrhoids were the direct result of a lack of outdoor exercise. His testimony and medical records establish that Dorsey frequently complains about such ailments, which apparently afflict him regardless whether he is enjoying outdoor recreation privileges in jail. Plaintiff's testimony did establish, however, that his psychiatric condition existed before he was placed in segregation in September 2003. Plaintiff testified that his mental condition had been "evaluated multiple times . . . over the years" and that, for about five years previously, he had taken Sinequan, a medication used in the treatment of depression and/or anxiety. Plaintiff also stated that he had been placed under a social worker's care at the prison by Wagoner in September 2002, and that, before that time, he had seen Dr. Strickland, a psychiatrist, once every 90 days. Because Dorsey cannot show that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged temporary denial of outdoor recreation, he fails to state a cognizable Section 1983 claim, particularly in light of the extensive and continuous care he received for his various ailments.

III. <u>MEDICAL CARE</u>

Dorsey testified that his claim in this case is not that he did not get adequate medical treatment for various physical conditions resulting from the lack of outdoor exercise, but that he did not get adequate treatment for his psychological conditions only, including depression and panic attacks. Dorsey was a convicted prisoner at all relevant times about which he complains. In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Id</u>. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1984 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176. The Fifth Circuit has reiterated in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), that the deliberate indifference standard applies to convicted prisoners like Dorsey.

15

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 114 S. Ct. at 1979 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

"The Supreme Court has reaffirmed that 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The 'deliberate indifference' standard permits courts to separate omissions that 'amount to an intentional choice' from those that are merely 'unintentionally negligent oversight[s].'" Southard v.

16

Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's serious medical needs.

Even assuming without deciding, however, that plaintiff's depression and panic attacks constitute a serious medical need for purposes of constitutional evaluation, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, establishes that he received ample and appropriate medical care while incarcerated in WCI. Plaintiff testified that he was seen on numerous occasions by social workers and a psychiatrist at WCI for his psychological conditions. Plaintiff was referred to psychiatrists or other mental health professionals on at least two occasions during the time period of his segregation from September 2003 until April 16, 2004, including October 1 and December 4, 2003. After his release from segregation, plaintiff was again referred to a mental health professional on March 3 and June 17, 2004. To the extent, plaintiff may allege a delay in being provided with medical care, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 302. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case at this time.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed or effectiveness of his medical care, it is equally clear that the medical care provided thus far has been constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be made based on this record. Plaintiff was seen by social workers and doctors, including psychiatrists, at WCI on

several occasions and provided with medication for his complaints. Contentions like Dorsey's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference). Therefore, plaintiff's complaints in this case about his medical care fail to state a claim for violation of his constitutional rights at this time sufficient to obtain relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 24th day of January, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE